UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

**CHARLES MAGNO**,                                              **COMPLAINT**

                        Plaintiff,                              Civ. No.:

            v.                                                  Trial by Jury is Demanded


**REPUBLIC BANK AND TRUST**
**COMPANY, CAPITAL ONE N.A., TD**
**BANK USA, N.A., EMPOWER FEDERAL**
**CREDIT UNION, CITIBANK, N.A.,** and
**FIRST NATIONAL BANK, USA**,

                        Defendants.
_____

CHARLES MAGNO (hereinafter referred to as "PLAINTIFF"), by and through undersigned counsel, alleges upon knowledge as to himself and his own acts, and upon information and belief as to all other matters, and brings this Complaint against Defendants REPUBLIC BANK AND TRUST COMPANY ("REPUBLIC"), CAPITAL ONE N.A., ("CAPITAL ONE"), TD BANK USA, N.A. ("TD"), EMPOWER FEDERAL CREDIT UNION ("EMPOWER"), CITIBANK, N.A. ("CITIBANK"), and FIRST NATIONAL BANK, USA ("FIRST NATIONAL") (collectively "DEFENDANTS"), and in support thereof alleges the following:

## PRELIMINARY STATEMENT

1.      PLAINTIFF brings this action for damages arising from DEFENDANTS' violations of the Telephone Consumer Protection Act (hereinafter referred to as the "TCPA"), 47 U.S.C. § 227.  Despite having informed them that PLAINTIFF had a limited cell phone plan and that their calls were costing him money, DEFENDANTS continued to call PLAINTIFF with an autodialer and without his consent, in violation of the TCPA.

1

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Western District of New York.

## PARTIES

4.      PLAINTIFF is a natural person residing in Depew, New York.

5.      REPUBLIC is a nationally chartered bank, with a principal place of business at 601 West Market Street, Louisville, Kentucky, 40202.

6.      CAPITAL ONE is a nationally chartered bank, with a principal place of business at 1680 Capital One Drive, McLean, Virginia, 22102.

7.      TD is a nationally chartered bank, with a principal place of business at 2035 Limestone Road, Wilmington, Delaware, 19808.

8.      EMPOWER is a nationally chartered federal credit union, with a principal place of business at 1 Member Way, Syracuse, New York, 13212.

9.      CITIBANK is a nationally chartered bank, with a principal place of business at 701 East 60th Street North, Sioux Falls, South Dakota, 57104.

10.      FIRST NATIONAL is a nationally chartered bank, with a principal place of business at 13386 Highway 90, Boutte, Louisiana, 70039.

11.      At all relevant times herein, each DEFENDANT was and is a "person" as defined by 47 U.S.C. § 153(39).

///

///

## STATEMENT OF FACTS

12.    PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 11 inclusive, above.

13.    Upon information and belief, at all relevant times herein, DEFENDANTS used, controlled, and/or operated an "automatic telephone dialing system" (also referred to herein as an "autodialer") as defined by the TCPA, 47 U.S.C. § 227(a)(1), 47 C.F.R. § 64.1200(f)(2), and the July 10, 2015 Federal Communications Commission TCPA Omnibus Declaratory Ruling and Order.

14.    DEFENDANTS' employees performed the acts alleged in this Complaint while acting within the scope of their actual or apparent authority.

15.    In or about early 2018, DEFENDANTS began calling PLAINTIFF's cellular telephone number, (716) ***-2017, in an attempt to collect various debts.

16.    After each DEFENDANT initially called PLAINTIFF on his cell phone, PLAINTIFF informed each DEFENDANT that he had a limited number of available minutes on his cell phone, and requested to each DEFENDANT that they refrain from calling him at that number.

17.    REPUBLIC began calling PLAINTIFF in April 2018 from a number ending in 5386, and has called PLAINTIFF approximately seventeen times after PLAINTIFF revoked his consent to be called.

18.    CAPITAL ONE began calling PLAINTIFF in March 2018 from a number ending in 6600, and called PLAINTIFF approximately thirty-seven times after PLAINTIFF revoked his consent to be called.

19.     TD began calling PLAINTIFF in March 2018 from a number ending in 5881, and called PLAINTIFF approximately twenty-three times after PLAINTIFF revoked his consent to be called.

20.     EMPOWER began calling PLAINTIFF in March 2018 from a number ending in 2200, and called PLAINTIFF approximately twelve times after PLAINTIFF revoked his consent to be called.

21.     FIRST NATIONAL began calling PLAINTIFF in March 2018 from a number ending in 9824, and called PLAINTIFF approximately fifty-two times after PLAINTIFF revoked his consent to be called.

22.     CITIGROUP began calling PLAINTIFF in March 2018 from numbers ending in 5726 and 5975, and called PLAINTIFF approximately eighty-two times after PLAINTIFF revoked his consent to be called.

23.     At all relevant times herein, DEFENDANTS did not make these calls for emergency purposes.

24.     Upon information and belief, DEFENDANTS were not calling PLAINTIFF to collect on a loan guaranteed by the United States.

25.     Upon information and belief, DEFENDANTS used an autodialer to make these calls.

26.     PLAINTIFF experienced the indications of an autodialer from each DEFENDANT, including a large and regular volume of calls, dropped calls, a "click" noise when answering the phone, and a notable delay between answering the phone and a representative beginning to talk.

27.     As a direct result of DEFENDANTS' calls placed to his cellular telephone service, PLAINTIFF experienced the concrete injuries of the invasion of his privacy, the unwanted

deprivation of the use of his cellular phone, the loss of the cost of electricity, the loss of prepaid minutes on his cellular phone, and inconvenience.

**FIRST CLAIM FOR RELIEF**

**VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)**
**BROUGHT BY PLAINTIFF**

28.    PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 27 inclusive, above.

29.    The TCPA provides the following:

> (1) It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

>>> […]

>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b).

30.    The TCPA defines an "automatic telephone dialing system" (also known as an "autodialer") as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a)(1).

31.     In or about early 2018, DEFENDANTS began calling PLAINTIFF's cellular telephone number, (716) ***-2017, in an attempt to collect various debts.

32.     After each DEFENDANT initially called PLAINTIFF on his cell phone, PLAINTIFF informed each DEFENDANT that he had a limited number of available minutes on his cell phone, and requested to each DEFENDANT that they refrain from calling him at that number.

33.     REPUBLIC began calling PLAINTIFF in April 2018 from a number ending in 5386, and has called PLAINTIFF approximately seventeen times after PLAINTIFF revoked his consent to be called.

34.     CAPITAL ONE began calling PLAINTIFF in March 2018 from a number ending in 6600, and called PLAINTIFF approximately thirty-seven times after PLAINTIFF revoked his consent to be called.

35.     TD began calling PLAINTIFF in March 2018 from a number ending in 5881, and called PLAINTIFF approximately twenty-three times after PLAINTIFF revoked his consent to be called.

36.     EMPOWER began calling PLAINTIFF in March 2018 from a number ending in 2200, and called PLAINTIFF approximately twelve times after PLAINTIFF revoked his consent to be called.

37.     FIRST NATIONAL began calling PLAINTIFF in March 2018 from a number ending in 9824, and called PLAINTIFF approximately fifty-two times after PLAINTIFF revoked his consent to be called.

38.    CITIGROUP began calling PLAINTIFF in March 2018 from numbers ending in 5726 and 5975, and called PLAINTIFF approximately eighty-two times after PLAINTIFF revoked his consent to be called.

39.    At all relevant times herein, DEFENDANTS did not make these calls for emergency purposes.

40.    Upon information and belief, DEFENDANTS were not calling PLAINTIFF to collect on a loan guaranteed by the United States.

41.    Upon information and belief, DEFENDANTS used an autodialer to make these calls.

42.    PLAINTIFF experienced the indications of an autodialer from each DEFENDANT, including a large and regular volume of calls, dropped calls, a "click" noise when answering the phone, and a notable delay between answering the phone and a representative beginning to talk.

43.    Based on these indications, PLAINTIFF alleges that each DEFENDANT used an autodialer to make the calls.

44.    As a result of these calls, each DEFENDANT is liable for statutory damages.

45.    PLAINTIFF is entitled to damages totaling $500.00 per call. See 47 U.S.C. § 227(b)(3).

46.    PLAINTIFF further alleges that each DEFENDANT caused said telephone calls to be placed willfully and/or knowingly, entitling PLAINTIFF to the maximum of treble damages, or $1,500.00 per call. *Id.*

47.    It has been necessary for PLAINTIFF to obtain the services of an attorney to pursue this claim, and should recover reasonable attorneys' fees therefor.

48.    As a direct result of DEFENDANTS' calls placed to his cellular telephone service, PLAINTIFF experienced the concrete injuries of the invasion of his privacy, the unwanted deprivation of the use of his cellular phone, the loss of the cost of electricity, the loss of prepaid minutes on his cellular phone, and inconvenience.

49.    PLAINTIFF therefore has standing for the purposes of Article III.

## DEMAND FOR JURY TRIAL

50.    Please take notice that PLAINTIFF demands trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully prays that this Court grant the following relief in PLAINTIFF's favor, and that judgment be entered against DEFENDANTS for the following:

(1)    For disgorgement of all of DEFENDANTS' revenues obtained through use of the practices at issue;

(2)    For statutory damages, pursuant to 47 U.S.C. § 227(b)(3), of the amount not to exceed $500.00 per offending call from each DEFENDANT;

(3)    For treble damages, pursuant to 47 U.S.C. § 227(b)(3), of the amount not to exceed $1,500.00 per offending call from each DEFENDANT;

(4)    For reasonable attorneys' fees for all services performed by counsel in connection with the prosecution of these claims;

(5)    For reimbursement for all costs and expenses incurred in connection with the prosecution of these claims; and

(6)    For any and all other relief this Court may deem appropriate.

Dated: Rochester, New York.
May 9, 2018

[CONTINUED ON NEXT PAGE]

8

Respectfully Submitted,

**DOUGLAS FIRM, P.C.**

/s/ Alexander J. Douglas

ALEXANDER J. DOUGLAS
36 West Main St., Ste 500
Rochester, NY  14614
Direct: (585) 568-2224
Fax: (585) 546-6185
alex@lawroc.com
*Attorney for Plaintiff*